IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PEANUT CORPORATION OF AMERICA, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Case No. 09-60452 |
| In re: | ) | |
| | ) | |
| PLAINVIEW PEANUT CO., LLC | ) | Case No. 09-61651 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| TIDEWATER BLANCHING CO., LLC | ) | Case No. 09-61652 |
| | ) | |
| Debtor. | ) | |

**MOTION TO APPROVE (A) SETTLEMENT AGREEMENT AND INSURANCE BUY-BACK BETWEEN HARTFORD AND THE TRUSTEE AND (B) PCA SALMONELLA CLAIM SETTLEMENT AND DISTRIBUTION PROCEDURES**

Roy V. Creasy, in his capacity as Chapter 7 Trustee (the "Trustee") of Peanut Corporation of America ("PCA"), Plainview Peanut Co., LLC ("Plainview") and Tidewater Blanching Co., LLC ("Tidewater," and, with PCA and Plainview, "PCA" or the "Debtors") hereby moves this Court (the "Motion") to approve (A) a Settlement Agreement and Insurance Buy Back (the "Settlement Agreement") to be entered into by the Trustee with Hartford Casualty Company and Hartford Fire Insurance Company (collectively, the "Hartford Insurers") (attached as Exhibit A); and (B) the PCA Salmonella Claim Settlement and Distribution Procedures (the "Procedures") (attached as Exhibit B).

The Settlement Agreement and the Procedures are the result of extensive negotiations between and among the Trustee, counsel to various claimants asserting prepetition bodily injury claims against the Debtor, and the Hartford Insurers. Together, the Settlement Agreement and

{#1287349-1, 999-999}

the Procedures will create a fund of $12 Million that will be available to pay the claims of those claimants who assert salmonella-related bodily injury claims, to be administered by the Trustee. The costs of administrations shall be paid from a $750,000 Administration Fund that shall also be created under the terms of the Settlement Agreement.

This Motion seeks the entry of separate orders approving each of these agreements—the proposed order approving the Settlement Agreement being attached as Exhibit C, and the proposed order approving the Procedures being attached as Exhibit D. This relief is sought pursuant to Section 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. PCA commenced Bankruptcy Case no. 09-60452 by filing a voluntary petition under Chapter 7 of the Bankruptcy Code on February 13, 2009. On the same day, Roy V. Creasy was appointed as Trustee. Plainview and Tidewater, subsidiaries of PCA, filed voluntary petitions under Chapter 7 on May 22, 2009, commencing case nos. 09-61651 and 09-61652, respectively, and Roy V. Creasy was appointed Trustee in those cases shortly thereafter.

3. PCA is a manufacturer and processor of peanut butter, peanut paste, and other peanut products which were sold to distributors as well as to manufacturers for incorporation into other products.

2

{#1287349-1, 999-999}

4. The discovery of salmonella bacteria in peanut products manufactured by PCA (the "Salmonella Outbreak") led PCA to institute, on January 13, 2009, a voluntary nationwide recall of its peanut products produced on or after July 1, 2008. PCA later expanded its voluntary recall and most recently, on January 28, 2009, announced a recall of all peanuts and peanut products processed at its Blakely, Georgia plant since January 1, 2007. On February 12, 2009, the Texas Department of Health ordered a recall of all products from PCA's Plainview, Texas plant.

5. Suits have been filed and claims have been asserted against PCA arising out of its alleged manufacture, sale, handling or distribution of peanuts and peanut products allegedly contaminated with salmonella bacteria, including claims for personal injury ("the Tort Claims") by persons allegedly infected with salmonella bacteria in peanut products sold by PCA (the "Tort Claimants") and claims by customers of PCA seeking compensation for costs they allegedly incurred in connection with the recall of PCA's products and their products that incorporated PCA's products (the "Recall Claimants"). The Tort Claimants have also asserted claims against certain customers of PCA.

6. The Hartford Insurers issued primary Commercial General Liability and Umbrella Liability insurance policies to the Debtors for a period up to and including October 1, 2009 (collectively, the "Policies"). The Trustee and the Hartford Insurers disagree about if and to what extent the Policies afford coverage for the Tort Claims. Among other things, they disagree about whether the Policies' exclusion of bodily injury and property damage "expected or intended from the standpoint of the insured" applies to claims arising out of the Salmonella Outbreak. On February 3, 2009, the Hartford Insurers filed an action seeking a declaratory

3

{#1287349-1, 999-999}

judgment as to the Hartford Insurers' rights and obligations, if any, in connection with the claims against PCA relating to the Salmonella Outbreak (the "Coverage Action").

7. Some of the Recall Claimants assert that they are entitled to coverage as additional insureds under the Policies for costs they have incurred in connection with the recall of their products and/or the cleaning or replacement of their equipment as a result of the incorporation of PCA's products. The Hartford Insurers and the Trustee agree, however, that this assertion is incorrect, because, among other reasons, the Policies exclude coverage for bodily injury or property damage "arising out of or related to the presence of suspected, presence or exposure to . . . Bacteria. . . from any source whatsoever." The only exception to this exclusion is for bodily injury or property damage "caused by the ingestion of food." While the claims of the Tort Claimants may be within this exception, the claims of the Recall Claimants are not. The recall of products of others that incorporated PCA's potentially contaminated peanut products was necessary whether or not any such products were actually ingested. In addition, any property damage caused to products of another by the incorporation of a potentially contaminated PCA product occurred upon incorporation, before the product could be ingested. For these reasons and others, the product recall damages sought by the Recall Claimants could not have been "caused by the ingestion of food."

8. Additionally, the policies contain a product recall exclusion (exclusion n.) excluding coverage for "Damages claimed for any loss, cost or expense incurred by [PCA] or others for the loss of use, withdrawal, recall ... replacement, adjustment, removal or disposal of" PCA's peanut products where, as in this case, the product is "withdrawn or recalled from the market... because of a known or suspected ... dangerous condition."

4

{#1287349-1, 999-999}

9. In recognition that product recall claims are not covered by the Policies, PCA has for years obtained product recall insurance coverage under separate policies purchased from AISLIC. Accordingly, the Trustee and the Hartford Insurers agree that there is no coverage available to the Recall Claimants under the Policies for product recall claims.

10. Mindful of the significant costs to the bankruptcy estates to resolve the claims of the Tort Claimants, the claims of customers against which such claims have or may be asserted, and its coverage dispute with the Hartford Insurers regarding the claims, the Trustee has worked with the Tort Claimants, the Hartford Insurers, and certain customers to arrive at a global resolution whereby the Debtors will implement a claims resolution process for claims asserted by the Tort Claimants, with allowed claims funded by the proceeds of a settlement with the Hartford Insurers.

11. Given the substantial cost of litigation with the Hartford Insurers, the potentially viable affirmative defenses set forth by the Hartford Insurers based on the terms, conditions and exclusions set forth in the Policies, the risks of ultimately not prevailing in any such litigation or dispute, the desire to obtain maximum value under the Policies at the earliest possible date for the purpose of making payments to Tort Claimants alleging harm, injury, or loss arising from Debtors' business operations and/or products, and the opportunity to reach a global resolution involving the Tort Claimants, the Trustee has determined that it is in the best interest of the Estates and their creditors to reach an expedited resolution of its dispute with the Hartford Insurers. The terms of such resolution are memorialized in the Settlement Agreement.

## THE SETTLEMENT AGREEMENT[1]

12. The Trustee, on behalf of himself, the Estates and Debtors, and the Hartford Insurers have entered into an Agreement, subject to the approval of this Court, that fully and finally compromises and resolves the coverage dispute and other disputes between or among them, including those arising in these chapter 7 cases and in the Coverage Action. As part of the compromise and resolution of these disputes, the Trustee wishes to sell and the Hartford Insurers wish to repurchase the Policies. Specifically, the Trustee seeks to sell the Policies, free and clear of all Claims or Interests, to the Hartford Insurers. The Trustee accordingly seeks the entry of an order, pursuant to Section 363 of the Bankruptcy Code, approving such a sale; providing the releases as set forth in the Settlement Agreement; finding that the Hartford Insurers are good faith purchasers of the Policies; and enjoining various Claims against Hartford (as defined in the Settlement Agreement) as described in the Approval Order. The Hartford Insurers have advised the Trustee that they would not pay the settlement amounts without the buyer protections provided by Section 363 of the Bankruptcy Code, the releases set forth in the Settlement Agreement, and the entry of an injunction as described in the Approval Order. The Trustee believes that the settlement with the Hartford Insurers and the implementation of the Procedures is the most fair, effective, efficient, and timely method in which to make payments to eligible Tort Claimants.

13. The Settlement Agreement contemplates that the Hartford Insurers shall purchase from the Trustee, and the Trustee shall sell, convey, transfer and deliver to the Hartford Insurers, upon payment of a Settlement Amount of $12,750,000, each of the Policies, and any and all

---

[1] The description of the Settlement Agreement in this Motion is qualified in its entirety by the Settlement Agreement, which should be consulted for a full recitation of its terms and conditions.

rights under the Policies, free and clear of any and all Interests of any and all Persons. The Hartford Insurers shall pay to the Trustee the Settlement Amount not later than the fifth business day after the Approval Order becomes a Final Order. The parties agree that the Settlement Amount is the total amount that the Hartford Insurers, or any of its affiliates or subsidiaries is obligated to pay on account of any and all Claims of any kind made under or related to the Policies. On account of its paying the Settlement Amount, the Hartford Insurers shall be released of any future obligations or responsibilities under the Policies.

14. Pursuant to the Settlement Agreement, the Trustee covenants and agrees that $12,000,000 of the Settlement Agreement shall be reserved for the purpose of paying Tort Claims, and shall fund the BI Claim Fund as provided in Section 1.4 of the Procedures. This sum is the full policy limit of the Policies incepting October 1, 2008. Based on the data collected by the Centers for Disease Control, fewer than five potential claims, occurred prior to October 1, 2008. Thus, under the Settlement Agreement, all Tort Claimants will share in the full proceeds available under the policies incepting October 1, 2008, without regard to any coverage defenses raised by the Hartford Insurers. The Trustee has not agreed to reserve any of the proceeds for the product recall claims because those claims are not covered under the Hartford Policies. Thus, outside of bankruptcy, no proceeds from the insurance policies would be available to pay those claims. Moreover, use of the settlement proceeds to pay the Tort Claimants directly benefits the Recall Claimants by reducing the Tort Claims that have been or could be asserted against them as a result of the Salmonella Outbreak. The settlement is thus fair, and all claimants receive the same benefit from the Policies as they would receive outside of bankruptcy.

15. In addition, the remaining $750,000 will be available to the Trustee for expenses incurred in connection with the establishment and implementation of the claims resolution

process for the Tort Claim, and shall fund the Administrative Fund as provided in Section 1.5 of the Procedures.

## THE PROCEDURES

16. The Procedures are designed to provide fair, equitable, and substantially similar treatment for all claims of salmonellosis resulting from an outbreak traced to the Debtor's peanut products.

17. In substance, the Procedures establish a mechanism whereby claimants would submit a detailed proof of claim form describing the nature of their injury, and attaching appropriate documentation. The Procedures authorize the Trustee to retain a Claims Administrator to assist in reviewing and assessing claims, and establish a voluntary mechanism for the liquidation of such claims by mediation and arbitration.

18. The Procedures further set forth a mechanism for the payment of claims out of the BI Claims Fund, as well as provide for the participation in the claims liquidation mechanism by manufacturers or distributors that may be co-liable with the Debtors on claims arising out of the salmonellosis outbreak.

## RELIEF REQUESTED

19. The Trustee requests the entry of orders in the form of the proposed Approval Orders. As to the Settlement Agreement, the Trustee seeks, pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9019 of the Bankruptcy Rules an order (in the form set forth in Exhibit C) (i) authorizing the Trustee to enter into a compromise settlement with the Hartford Insurers pursuant to which (among other things) the Trustee will provide the releases set forth in the Settlement Agreement; (ii) authorizing the sale of the Policies pursuant to the terms and conditions of the Settlement Agreement, free and clear of all Interests, including a finding that the Hartford Insurers are good faith purchasers within the meaning of section 363(m)

8

of the Bankruptcy Code; (iii) approving the Settlement Agreement in all respects; and (iv) enjoining various Claims against Hartford, including any claim of a Tort Claimant or Recall Claimant. As to the Procedures, the Trustee seeks the entry of an order (in the form set forth in Exhibit D) approving such procedures.

A. **The Agreement, Settlement and Releases Contemplated Thereunder Should Be Approved Pursuant to Bankruptcy Rule 9019.**

20. This Court has the right and the power to approve the Settlement Agreement, compromise, and release of claims contemplated thereunder. Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods Co.*, 308 U.S. 106, 130 (1939)). Indeed, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)).

21. "The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). The Trustee believes that the Settlement Agreement and sale to be effected by the Settlement Agreement are in the best interests of the Estates and their creditors. The Hartford Insurers have asserted a number of potentially viable affirmative defenses based on the terms, conditions and exclusions set forth in the Policies; thus, any dispute regarding the availability of insurance coverage under the Policies will prove costly and time consuming to litigate to a conclusion and will further delay payments to the Estates and the Tort

9

{#1287349-1, 999-999}

Claimants. Even were the Trustee to obtain a favorable determination in an adversary proceeding, it is likely that the Hartford Insurers would appeal, further prolonging a final decision and increasing the litigation expense to the Estates.

22. A court considering whether to approve a compromise must consider whether the value of the proposed settlement is reasonably equivalent to the value of the claim that is surrendered or modified under the settlement." *In re Energy Cooperative, Inc.*, 886 F.2d at 929. The test for reasonable equivalence is "'whether or not the terms of the proposed compromise fall within the reasonable range of litigation possibilities.'" *Id.* quoting *In re New York, New Haven & Hartford R. Co.*, 632 F.2d 955 (2d Cir. 1980), *cert. denied*, 449 U.S. 1062 (1980) (other citation omitted); *see also In re Apollo Steel Co.*, No. 94 B2361, 1994 WL 713697, at *4 (Bankr. N.D. Ill. Dec. 19, 1994) ("If the proposed settlement is within the range of reasonable possible outcomes were the matter tried on its merits, or at least within the range of reasonable business judgment considering cost and litigation hazard, the settlement should ordinarily be approved.").

23. In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In deciding whether a particular settlement falls within the "range of reasonableness," courts consider the following factors: (a) the probability of success in litigation; (b) the likely difficulties of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interest of the creditors. *See In re Martin*, 91 F.3d at 393.

24. Here, the probability of success in litigation regarding coverage under the Policies is uncertain, but the Settlement Agreement is clearly well within the range of results that might be obtained if the claims were litigated. The issues involved in litigation over the coverage would be complex and the litigation would be costly and time consuming. Moreover, at the conclusion of the litigation, the Debtors could be found to have no coverage for some or all of the claims related to the Salmonella Outbreak, as the Hartford Insurers contend that the Policies' exclusion of bodily injury and property damage "expected or intended from the standpoint of the insured" applies to all such claims. The settlement is also the best outcome for the Estates and their creditors. As Chapter 7 liquidations, the Debtors have no ongoing business. The Estates' assets are limited. Thus, the interests of the creditors are best served by a settlement which balances maximizing the proceeds of the policies with preserving the Estates' remaining assets. *See In re Martin*, 91 F.3d at 394 ("a Trustee has a fiduciary relationship with *all* creditors of the estate") (emphasis in original). As a result, the settlement is clearly within the range of reasonableness for the parties involved. The fact that the substantial majority of Tort Claimants have consented to this settlement supports a finding that it is within the range of reasonableness.

25. The Trustee believes that the Settlement Agreement, compromise, and release of Claims provided thereunder are in the best interest of the Estates and their creditors because they provide for a payment to the Estates that is well within the range of results, if not above the range, that might be achieved if the Estates were to litigate over the availability of the insurance coverage that is being compromised. The Trustee has concluded that the Settlement Agreement reflects an appropriate balance of the costs, risks and potential rewards of any dispute with respect to the Policies. Accordingly, the Trustee respectfully requests that this Court approve the Settlement Agreement, authorize and direct the Trustee to perform and effectuate the Settlement

{#1287349-1, 999-999}

Agreement, and the transactions contemplated thereunder, in accordance with its terms and conditions.

### B. The Sale of the Subject Policies to the Hartford Insurers Free and Clear of Interests Should be Approved Pursuant to Section 363 of the Bankruptcy Code.

26. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession may sell property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts have recognized that insurance policies are property of a debtor's estate, which may be sold with court approval under Section 363 of the Bankruptcy Code. *See, e.g., Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3d Cir. 1987); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-93 (2d Cir. 1988) ("Numerous courts have determined that a debtor's insurance policies are property of the estate"; the bankruptcy court was therefore authorized to approve a settlement of the debtor's insurance coverage claims pursuant to the court's authority to approve the sale of the debtor's property); *cf. In re Martin*, 91 F.3d at 389, 394-95 (3d Cir. 1996) ("We agree with the Third Circuit that the disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim... .").

27. A debtor's sale of property outside the ordinary course of business should be approved if the debtor demonstrates a sound business justification for the proposed transaction. *See Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re United Healthcare Sys., Inc.*, Civ. No. 9701159, 1997 WL 176564, at *4, n.2 (D.N.J. Mar. 26, 1997) ("District courts in [the Third] Circuit have consistently followed the 'sound business rule' enunciated by the Second Circuit's decision in Lionel....").

28. Applying such a business judgment standard, courts in mass tort bankruptcy cases have approved insurance policy "buy-backs" – like the one contemplated under the Settlement

12

{#1287349-1, 999-999}

Agreement – under Sections 363(b) and (f) of the Bankruptcy Code. *See, e.g., In re Johns-Manville Corp.*, 837 F.2d at 93 (affirming bankruptcy court "authority to approve the settlements and to channel claims arising under the policies to the proceeds of the settlement"); *see also In re Dow Corning Corp.*, 198 B.R. 214, 222 n.7 (Bankr. E.D. Mich. 1996) (proper test for approval of insurance settlements under either Bankruptcy Rule 9019 or section 363(b) of the Bankruptcy Code is the business judgment standard).

29. The Trustee's decision to sell the Policies to the Hartford Insurers is based upon sound business judgment. The purchase price of $12,750,000 is fair and reasonable consideration for the sale of the Policies. Also, in light of the uncertainty of coverage liability, as well as the necessary delay and cost of proving liability, settlement is preferable and a better business decision compared to case by case adjudication of these claims. In the exercise of his sound business judgment, the Trustee has determined that a sale of the Policies to the Hartford Insurers is in the best interests of the Estates and their creditors. Virtually all of the proceeds from the sale of the Policies will be preserved for payment of the Tort Claims and the Tort Claimants have consented to the amount of the purchase price. Accordingly, the Trustee respectfully submits that the requisite standards under both Bankruptcy Rule 9019 and Section 363 of the Bankruptcy Code are satisfied.

30. Section 363(f) of the Bankruptcy Code provides that the Trustee or Debtor-in-possession may sell property "fee and clear of any interest in such property of an entity other than the estate" if at least one of the several conditions enumerated in section 363(f) is satisfied. *See* 11 U.S.C. § 363(f)(1)-(5). Section 363(f) authorizes a sale free and clear of "interests," not merely liens, and thus permits a sale of property free and clear of all claims and interests of any entity that "are derivative of the Debtors' rights in that property." *See In re Dow Corning Corp.*,

13

198 B.R. at 244; *see also In re Johns-Manville Corp.*, 837 F.2d at 94 (claims of coinsured party and direct action of asbestos claimants could be channeled to the proceeds of insurance settlement). Section 363(f) is "written in the disjunctive, not the conjunctive;" "therefore, if any one of the five conditions of section 363(f) are met, the debtor has the authority to conduct the sale free and clear." *In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).

31.     Here, the Settlement Agreement satisfies a condition enumerated in section 363(f) of the Bankruptcy Code. Section 363(f)(5) of the Bankruptcy Code provides that the debtor may sell property free and clear of any entity's interest if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." *See* 11 U.S.C. § 363(f)(5). To the extent any entities might claim any Interest in the Policies, such entities hold such Interest as tort or contract claimants, and therefore, each of them could be compelled to accept money in satisfaction of their interests. *See In re WBQ P'ship*, 189 B.R. 97, 106-07 (Bankr. E.D. Va. 1995) (finding 363(f)(5) is applicable to claims which can be reduced to money judgment for singular violation, as opposed to violations requiring equitable remedy, such as an injunction, for complete relief).

32.     Additionally, section 363(f)(2) provides that property may be sold free and clear of an interest if the entity holding such interests consents. Failure to object to a sale has been deemed to constitute such consent. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent."); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section

14

{#1287349-1, 999-999}

363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). Thus, to the extent that persons with Interests in the Policies either affirmatively consent or do not object to the sale, section 363(f)(2) is satisfied.

33. Interests in the Policies will be adequately protected, in accordance with section 363(e) of the Bankruptcy Code, because any such Interest will attach to the proceeds of the sale, as provided in the Approval Order. *See In re Johns-Manville Corp.*, 837 F.2d at 94 ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interest, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Although no proceeds of the sale are being reserved for the Recall Claimants, no coverage for their claims exist under the Policies. As noted above, the Policies exclude coverage for such claims. *See infra* ¶ 7. Thus, outside of bankruptcy, the Recall Claimants would have no right to any of the proceeds of the Policies for their Recall Claims.

34. Furthermore, the Settlement Agreement is the product of good faith, arms-length bargaining among the parties. The Settlement Agreement is being entered into by the parties without fraud or collusion with each party represented by counsel. The Trustee therefore requests that the Court expressly find that the Hartford Insurers are good faith purchasers for value and are entitled to the protections afforded under Section 363(m) of the Bankruptcy Code. *See* 11 U.S.C. § 363(m).

### C. A Supplemental Injunction Should Be Issued Under Section 105(a) to Implement the Sale of the Subject Policies Free and Clear of Interests.

35. Coupled with the Court's power to authorize the sale of the Debtors' property free and clear of interests is its power to enjoin creditors of the Debtors or any other Person from

pursuing a purchaser of such property of the estate. Such an injunction frequently is "necessary and appropriate to give the 'free and clear' aspects of 363(f) meaning." *See In re Dow Corning Corp.*, 198 B.R. at 245. Accordingly, this Court has the power under Sections 363 and 105(a) of the Bankruptcy Code to issue a supplemental injunction to prohibit claims against a bankruptcy estate from being raised against a buyer of assets from that estate, such as the Hartford Insurers here, and to attach any such claims to the proceeds of the sale. *See In re Johns-Manville Corp.*, 837 F.2d at 93-94; *In re Dow Corning Corp.*, 198 B.R. at 245.

36. The Injunction is necessary and appropriate to protect the integrity of the sale and settlement contemplated by the Settlement Agreement. As reflected in the Settlement Agreement, without the protection of the Injunction, the Hartford Insurers will not consummate the repurchase of the Policies, and the Trustee will lose the benefit of the proceeds of the sale. In addition, the holders of present and future Claims are adequately protected in that they will have the right to pursue such Claims against the proceeds of the sale of the Policies subject to the terms of the Settlement Agreement.

37. Accordingly, the Trustee respectfully submits that this Court should issue the Injunction to give effect to the sale of the Policies to the Hartford Insurers free and clear of Interests in accordance with the Settlement Agreement.

38. In addition, the procedures set forth for the liquidation, payment, and resolution of claims is fair, reasonable, and in the best interest of creditors and the Estates. The procedures are intended to provide for the fair and equitable resolution of all claims arising out of the salmonellosis outbreak, while at the same time fully respecting the rights of all claimants. The Trustee accordingly seeks the entry of an order providing for the approval of the Procedures.

16

{#1287349-1, 999-999}

### NOTICE, PRIOR APPLICATIONS AND WAIVER OF BRIEF

39. Notice of this Motion has been provided to: (i) each Person known to the Trustee or Debtors to have a Claim against any of them or the Estates through participation in the Bankruptcy Cases, the filing of a lawsuit, or the filing of a proof of claim or other assertion of a Claim or otherwise (or to his counsel of record); (ii) any and all Persons known to the Trustee or to Debtors entitled or allegedly entitled to insurance coverage under the Policies, included as an additional insured and those Persons falling within a policy definition of "named insured"; (iii) all other Persons who have filed timely proofs of claim in the Bankruptcy Cases; (iv) all Persons on the master service list maintained in the Bankruptcy Cases; and (v) all other parties in interest pursuant to Bankruptcy Rules 2002 and 6004 and any other applicable local rules, including any Person who has filed a notice of appearance and demand for service of papers in the Bankruptcy Cases. Additionally, the Trustee will publish notice of the Motion and the hearing in the national edition of USA Today.

40. Such notice is appropriate and is in accordance with the requirements of the Bankruptcy Rules, the Bankruptcy Code and applicable law. The Trustee respectfully submits that no further notice of the Motion is required. No prior request for the relief sought herein has been made to this Court or any other court.

41. WHEREFORE, the Trustee respectfully requests that the Court enter the Approval Orders, attached hereto as Exhibit C and Exhibit D, (i) granting the relief requested in the Motion, (ii) authorizing the Trustee to enter into a compromise and settlement with the Hartford Insurers pursuant to which (among other things) the Trustee will provide the releases as set forth in the Settlement Agreement; (iii) authorizing the sale of the Policies to the Hartford

17

{#1287349-1, 999-999}

Insurers pursuant to the terms and conditions of the Settlement Agreement, free and clear of all Interests, (iv) approving the Settlement Agreement in all respects; (v) providing that the Hartford Insurers are good faith purchasers; (vi) enjoining various Claims against Hartford, as described in the Approval Order; (vii) approving the Procedures; and (viii) granting such other and further relief as may be just and proper.

Dated: September 10, 2009

Respectfully submitted,

ROY V. CREASY, TRUSTEE

By: /s/ Richard C. Maxwell

Richard C. Maxwell, Esq. (VSB No. 23554)
B. Webb King, Esq. (VSB No. 47044)
Woods Rogers PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Telephone: 540-983-7628
Facsimile: 540-983-7711
rmaxwell@woodsrogers.com
  *Counsel for Roy V. Creasy, Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were mailed by first class mail on September 10, 2009, to all creditors and parties in interest in this case. On that same date, a copy of the foregoing was filed with the Court's CM/ECF system and sent through that system to all parties designated to receive same.

/s/ Richard C. Maxwell

{#1287349-1, 999-999}