**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| In re: <br><br> PEANUT CORPORATION OF AMERICA, <br><br>                            Debtor. | Chapter 7 <br><br> Case No. 09-60452 |
| In re: <br><br> PLAINVIEW PEANUT CO., LLC <br><br>                            Debtor. | Case No. 09-61651 |
| In re: <br><br> TIDEWATER BLANCHING CO., LLC <br><br>                            Debtor. | Case No. 09-61652 |
| HARTFORD CASUALTY INSURANCE COMPANY <br> HARTFORD FIRE INSURANCE COMPANY <br> and <br> ROY V. CREASY, TRUSTEE, <br>                      Movants, <br> v. <br><br> GRANGE MUTUAL CASUALTY COMPANY, <br>                        Respondent. | Contested Matter No. _____ |

**MOTION TO ENFORCE SALE APPROVAL ORDER AND INJUNCTION**

Hartford Casualty Insurance Company and Hartford Fire Insurance Company (collectively, the "Hartford Insurers"), joined herein by Roy V. Creasy, in his capacity as Chapter 7 Trustee of the above-captioned debtors' estates (the "Trustee"), move this Court, pursuant to Fed. R. Bankr. P. 9014 and 9020, to enforce its October 2, 2009 Order (the "Order").

The Order approved, under Fed. R. Bankr. P. 9019, a settlement between the Trustee and the Hartford Insurers. In connection with that settlement, the Hartford Insurers bought back,

from the Trustee, certain insurance policies issued by the Hartford Insurers to Debtors (the "Policies"). Pursuant to Section 363 of the Bankruptcy Code, the Harford Insurers bought back those Policies free and clear of any liens, claims and interests. In order to give effect to the free and clear nature of the sale, Paragraph G of the Order expressly enjoins the commencement of any action or proceeding against the Hartford Insurers based on, arising under or out of, derived from or attributable to (a) the activities of the Debtors giving rise to claims under the Policies, or (b) the Policies themselves.

Grange Mutual Casualty Company ("Grange") has commenced, and has refused to dismiss, an action that falls squarely within the terms of this injunction. Accordingly, the Hartford Insurers and the Trustee respectfully ask this Court to enter an order (1) ordering Grange to dismiss the action, (2) ordering Grange to reimburse the Hartford Insurers and the Trustee for the payment of all fees and costs incurred in connection with this motion, and (3) imposing such other sanctions against Grange and/or its counsel as the Court deems appropriate.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      Peanut Corporation of America commenced Bankruptcy Case No. 09-60452 by filing a voluntary petition under Chapter 7 of the Bankruptcy Code on February 13, 2009. On the same day, Roy V. Creasy was appointed as Trustee. Plainview Peanut Co., LLC and Tidewater Blanching Co., LLC, subsidiaries of Peanut Corporation (Plainview, Tidewater, and Peanut Corporation collectively referred to as "PCA"), filed voluntary petitions under Chapter 7

on May 22, 2009, commencing case nos. 09-61651 and 09-61652, respectively, and Roy V. Creasy was appointed Trustee in those cases shortly thereafter.

3. PCA was a manufacturer and processor of peanut butter, peanut paste, and other peanut products which were sold to distributors as well as to manufacturers for incorporation into other products.

4. The discovery of salmonella bacteria in peanut products manufactured by PCA (the "Salmonella Outbreak") led PCA to institute, on January 13, 2009, a voluntary nationwide recall of its peanut products produced on or after July 1, 2008. PCA later expanded its voluntary recall, and on January 28, 2009, announced a recall of all peanuts and peanut products processed at its Blakely, Georgia plant since January 1, 2007. On February 12, 2009, the Texas Department of Health ordered a recall of all products from PCA's Plainview, Texas plant.

5. Prior to PCA's Chapter 7 filing, various suits were filed and claims asserted against PCA arising out of its alleged manufacture, sale, handling or distribution of peanuts and peanut products allegedly contaminated with salmonella bacteria, including claims for personal injury ("the Tort Claims") by persons allegedly infected with salmonella bacteria in peanut products sold by PCA (the "Tort Claimants"). The Tort Claimants also asserted claims against certain customers of PCA.

6. The Policies include primary Commercial General Liability and Umbrella Liability insurance policies issued by the Hartford Insurers to the Debtors for a period up to and including October 1, 2009. The Trustee and the Hartford Insurers disagreed about if and to what extent the Policies afford coverage for the Tort Claims. On February 3, 2009, the Hartford Insurers filed an action seeking a declaratory judgment as to the Hartford Insurers' rights and

obligations, if any, in connection with the claims against PCA relating to the Salmonella Outbreak (the "Coverage Action").

7. After the bankruptcy case was filed, the Trustee and the Hartford Insurers entered into a settlement resolving PCA's claims against the Hartford Insurers relating to the Salmonella Outbreak (the "Settlement Agreement"). Pursuant to the Settlement Agreement, the Trustee agreed to sell the Policies to the Hartford Insurers, and the Hartford Insurers agreed to pay the sum of $12,750,000. The Trustee reserved $12 million of this amount—the full policy limit of the Policies incepting October 1, 2008—for the purpose of paying Tort Claimants and used that amount to fund the BI Claim Fund established pursuant to the PCA Salmonella Claim Settlement and Distribution Procedures approved by this Court simultaneously with the Settlement Agreement. *See* Order Approving PCA Salmonella Claim Settlement and Distribution Procedures, dated Oct. 2, 2009.

8. Upon motion and notice to all interested parties, including actual notice to known claimants and customers of PCA and publication notice,[1] the Court on October 2, 2009 entered the Order, approving the Settlement Agreement and the sale of the Policies to the Hartford Insurers. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, Paragraph G of the Order enjoins the commencement of any action or proceeding against the Hartford Insurers to enforce claims "based on, arising under or out of, derived from or attributable to (i) activities of Debtors that give rise to Claims under the Policies, or (ii) the Policies," including any claim "arising from or related to the Salmonella Outbreak." No appeals from the Order were taken, and on or about October 12, 2009, the Order became final and non-appealable.

---

[1] *See* Motion to Approve (A) Settlement Agreement and Insurance Buy-Back Between Hartford and the Trustee and (B) PCA Salmonella Claim Settlement and Distribution Procedures, dated Sept. 10, 2009; Certificate of Publication, dated Sept. 30, 2009.

9. On December 7, 2009, Grange, through its counsel, Warren S. George, filed a Complaint for Declaratory Judgment (the "Complaint") in the Court of Common Pleas, Cuyahoga County, Ohio, seeking a declaratory judgment that Hartford Casualty Insurance Company is obligated to Grange under the Policies. (A copy of the Complaint is attached as Exhibit A to this Motion.) The Complaint alleges that under its insurance policies, Hartford Casualty has a duty to defend and to indemnify Kanan Enterprises, Inc. (d/b/a King Nut Companies) ("Kanan"), a customer of PCA, against claims asserted in the *Almer* litigation, a lawsuit seeking damages against Kanan for a death allegedly resulting from the consumption of peanut butter manufactured by PCA and distributed under the King Nut label. The Complaint asserts that Kanan is entitled to coverage under certain of the Policies incepting on October 1, 2008, as a contractual indemnitee of PCA. Grange asserts it has the right to pursue Kanan's alleged rights under those Policies pursuant to a "Partial Qualified Assignment of Rights" issued by Kanan.

10. On December 15, 2009, shortly after the Hartford Insurers became aware of the Complaint, counsel for the Hartford Insurers contacted Mr. George and informed him that the filing of the Complaint and the commencement of the action against the Hartford Insurers violated the Order and forwarded a copy of the Order to Mr. George. (See e-mails attached as Exhibits B and C to this Motion.) In a letter dated December 16, 2009, the Hartford Insurers set forth in detail how the Complaint fell squarely into the actions enjoined by Paragraph G of the Sale Order, and requested that Grange withdraw the Complaint. To date, Grange has failed to do so.

**RELIEF REQUESTED**

11. The Hartford Insurers, joined by the Trustee, request the entry of an order requiring that: (1) Grange to dismiss the action commenced by the Complaint, (2) Grange pay to the Hartford Insurers and the Trustee all attorneys' fees and costs incurred in connection with the Complaint, including attorneys' fees and costs with respect to this Motion, and (3) Grange pay a punitive sanction, in an amount determined by the Court, on account of Grange's willful disregard of this Court's injunction.

**BASIS FOR RELIEF**

12. The Order includes an injunction that unambiguously bars the assertion of claims against the Hartford Insurers based on or arising from Debtors' activities or the Policies, including the 2008 policies identified in the Complaint. Specifically, Paragraph G of the Order provides that:

> Pursuant to Section 105(a) and 363 of the Bankruptcy Code, all Persons who have held or asserted, who hold or assert, or who may in the future hold or assert any Claim or Interest of any kind or nature against or in any of the Debtors, their bankruptcy estates, the Policies, or the Hartford Insurers based upon, arising under or out of, derived from or attributable to (i) activities of Debtors that give rise to Claims under the Policies, or (ii) the Policies, including without limitation any Claim arising from or related to the Salmonella Outbreak, and any Extra-Contractual Claim, Insurance Coverage Claim or Direct Action Claim, whenever or wherever arising or asserted (including all thereof in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty) shall be and herby are permanently stayed, restrained and enjoined from asserting any such Interests against Hartford and from continuing, commencing, or otherwise proceeding or taking any action against Hartford to enforce such Interests or Claims for the purpose of directly or indirectly collecting, recovering or receiving payments from Hartford with respect to any such Claim or Interest.[2]

13. The Complaint falls squarely within the terms of the injunction. It commences an action for the purposes of collecting payment from the Hartford Insurers under certain of the

---

[2] All capitalized terms are as defined in the Settlement Agreement.

Policies for claims arising from or related to the ingestion of salmonella-contaminated peanut products produced by PCA. The Order specifically and unambiguously enjoins the assertion of any such claim.

14. The Order is final and no longer subject to appeal or other challenge. Kanan, through whom Grange now claims rights, was actively involved in the negotiations that led to the Settlement Agreement and the Claims Procedures and had actual notice of the Trustee's motion for approval of the Settlement Agreement and the injunction contained in the Order.

15. This Court's authority to enforce the Order cannot be subject to question. Grange's failure to dismiss the Complaint, after having been expressly advised of the injunction and its violation thereof, is a willful violation of the Order. An award of sanctions, in the form of attorneys fees and costs, as well as punitive damages in an amount determined appropriate by the Court, is appropriate.

## NOTICE, PRIOR APPLICATIONS AND WAIVER OF BRIEF

16. Notice of this Motion has been provided to Grange, by service on its registered agent, with a copy to counsel.

17. Such notice is appropriate and is in accordance with the requirements of the Bankruptcy Rules, the Bankruptcy Code and applicable law. The Hartford Insurers, joined by the Trustee, respectfully submit that no further notice of the Motion is required. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Hartford Insurers, joined by the Trustee, respectfully request that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: January 5, 2010.

Respectfully submitted,

/s/ Phillip R. Lingafelt
Phillip R. Lingafelt
GLENN, FELDMANN, DARBY &
  GOODLATTE
37 Campbell Avenue, SW
Roanoke, VA  24011
Tel:  (540) 224-8028
Fax:  (540) 224-8050

Craig Goldblatt
Nancy Manzer
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6483
Fax: (202) 663-6363

Lee H. Ogburn
KRAMON & GRAHAM, PA
One South Street, Suite 2600
Baltimore, MD  21202
Tel:  (410) 752-6030
Fax:  (410) 361-8210

*Attorneys for Hartford Casualty Insurance Company and Hartford Fire Insurance Company*

 /s/ Richard C. Maxwell
Richard C. Maxwell, Esq.
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Tel:  (540) 983-7628
Fax:  (540) 983-7711Fax

*Attorney for Roy V. Creasy, Trustee*

{#1316701-1, 999-999}